# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE L. RODRIGUEZ, :
:
      Plaintiff :
: CIVIL NO. 13-2205
      v. :
:
CAROLYN W. COLVIN, :
Commissioner of Social Security, :
:
      Defendant. :

## REPORT AND RECOMMENDATION

RICHARD A. LLORET                                                                        June 30, 2015
U.S. MAGISTRATE JUDGE

      Jose Rodriguez ("Rodriguez") alleges the Administrative Law Judge ("ALJ") erred in denying his application for Supplemental Security Income ("SSI") by deciding that he could perform jobs existing in significant numbers in the national economy, and was therefore not disabled under the Social Security Act. Pl's Br. and Statement of Issues in Supp. of Req. for Rev. 2-10 ["Pl's Br."]. Plaintiff's sole contention is that the jobs identified by the vocational expert are inconsistent with his Residual Functional Capacity ("RFC") and the job requirements listed in the Dictionary of Occupational Titles ("DOT"). *See id.* at 3.

      After careful review, I find that there was not an inconsistency between the DOT and RFC findings in this case. I respectfully recommend that the request for review be DENIED and the judgment of the ALJ be AFFIRMED.

## **PROCEDURAL HISTORY**

The ALJ denied Rodriguez's claim for SSI on August 18, 2011. R. 28. Applying the five-step sequential analysis,[1] the ALJ found Rodriguez had not engaged in substantial gainful activity since February 9, 2010. R. 23. He was found to have suffered from the following severe impairments cervical spine/left upper extremity impairment and left knee osteoarthritis. *Id* (citing 20 C.F.R. § 416.920(c)). None of these impairments or combination of impairments equaled the severity of one of the listed impairments. R. 24; *see also* 20 CFR § 416.920(d).

In addition, the ALJ found that

> the claimant has the residual functional capacity to a restricted range of light work activity (*i.e.* work that requires maximum lifting of 20 pounds and frequent lifting of 10 pounds; some light jobs are performed while standing, and those performed in the seated position often require operation of hand or leg controls; a person capable of performing light work can, in most cases, also perform sedentary work[2] (citing 20 CFR 416.967(b)).

---

[1] For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit his ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a Residual Functional Capacity ("RFC") to perform work with his limitations and can return to his previous work with that RFC; and (5) can perform any other work existing in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 416.967(a); 404.1567(c). Further guidelines provide that "[t]he regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other

R. 24-25. Based on this RFC and Rodriguez's age, education, work experience, and testimony from the vocational expert, the ALJ found that he could perform various jobs in the national economy, including as a cashier-parking lot (exertionally light), order clerk (exertionally sedentary), and charge account clerk (exertionally sedentary). R. 27. In concluding his opinion, the ALJ found that Rodriguez was not disabled. R. 28.

The Appeals Council denied Rodriguez's request for review on February 22, 2013. R. 1-4. He brings this civil action for judicial review through 42 U.S.C. § 405(g).

## **FACTUAL HISTORY**

At the time of the ALJ decision, Rodriguez was 48 years old. R. 35. His past relevant work experience included a position as a truck driver. R. 53. He had an eleventh grade education. R. 157. Rodriguez initially filed an application for Social Security benefits on February 9, 2010. R. 67. That application was denied. R. 73. Rodriguez requested a hearing before the ALJ, which was held on January 26, 2011. R. 31. The ALJ ruled against Rodriguez on August 18, 2011. R. 28. The Appeals Council also denied that application. R. 1-4.

During the ALJ hearing, Rodriguez testified about his various physical limitations. He was admitted to Temple University Hospital in June of 2010 for an MRI performed on his neck. R. 41. Rodriguez described his pain as "about an eight. . ." *Id.* He takes Xanax for sleep relief, along with Omeprazole for his stomach and Hydrocodone for pain relief, as well as a handful of other drugs that he could not recall during the

---

sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use

administrative hearing. R. 42-44.

The claimant then detailed his treatment history with his left knee. He testified that his problems with his knee began at a young age, after he was cut and the wound became infected. R. 48. He also described his household activities, including the fact that his niece is responsible for most of the chores. R. 51. During the day, Rodriguez mentioned that he sometimes reads a book or talks to family members who live near him. R. 53. He also walks around his neighborhood or walks to doctor's appointments which are located about two blocks from his house. *Id.* He can only walk a block or two before he must stop for approximately 10 to 15 minutes. R. 54.

Next, the ALJ heard testimony from Gary Young, a vocational expert assigned to the case. The vocational expert testified that Rodriguez performed work as a light truck driver, DOT code 906.683-022, semi-skilled SVP[3] of 3 and medium exertion. R. 55-56.

---

of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5.

[3] Special Vocational Preparation (SVP) levels are used to

> measure the skill level necessary to perform a particular job. SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). "A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties." *Id.* SVP levels in the DOT range from level 1 to level 9. *Id.* The DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR. Section 404.1568 of the CFR classifies occupations into three categories: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)-(c) (2014). Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 404.1568(a). Unskilled work corresponds to an SVP level of 1–2; semi-skilled work corresponds to an SVP level of 3–4; and skilled work corresponds to an SVP level of 5–9. SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

*Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014).

He also admitted that none of the skills Rodriguez used as a light truck driver could transfer from light or sedentary work. R. 56. Because the claimant needs a cane to walk and the numerous medical problems available from the record, Rodriguez was "limited to simple jobs, to routine-type jobs." R. 57. Further, the vocational expert noted that "[Rodriguez] has cervical disc problems and a left shoulder problem. So he won't be able to use his arm that much." R. 58. As a truck driver was no longer a viable employment option, the vocational expert identified jobs as a parking lot cashier, order clerk, or call-out operator that the claimant could perform with his medical conditions. R. 58-60.

The claimant's attorney undertook further testimony from Rodriguez, who explained that he could only sit and stand for one hour. R. 61. The rest of the time, he testified, he spent laying down. *Id.* He spends most of the day laying down so that he can "elevate my leg, so I could elevate—my pain in my leg. I take two pillows and lay it down—put my leg on top." R. 62. The vocational expert admitted that under these conditions, as described by the claimant, there was no substantial gainful activity that he could perform in the national economy.

## **DISCUSSION**

A claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009). In reviewing an ALJ's disability determination, I must accept all the ALJ's fact findings if supported by substantial

5

evidence or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, with respect to the ALJ's legal conclusions and application of legal principles, I must conduct a "plenary review." *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006).

This case hinges on whether the plaintiff could perform jobs existing in substantial numbers in the national economy. This is a question that arises at step five of the five-step sequential evaluation process. 20 CFR § 416.920(g).

> To determine what type of work (if any) a particular claimant is capable of performing, the Commissioner uses a variety of sources of information, including the DOT, the SSA's own regulatory policies and definitions (found in the Code of Federal Regulations ("CFR")), and testimony from VEs.

*Zirnsak*, 777 F.3d at 616. Pursuant to 20 C.F.R. § 416.966(d), "the Agency may take administrative notice at step five of 'reliable job information' found in the <u>Dictionary of Occupational Titles (DOT)</u>."[4] *See* Def. Br. at 3. A vocational expert may provide occupational analysis and guidance at this step of the analysis. *See* 20 CFR § 416.966(e).

---

[4] "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." *McHerrin v. Astrue,* No. Civil Action No. 09–2035, 2010 WL 3516433, at *3 (E.D.Pa. Aug. 31, 2010) (citing SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000)). The qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level. *Appendix C,* Dictionary of Occupational Titles, *available at* www.occupationalinfo.org/appendxc_1.html. Strength level "reflects the estimated overall strength requirement of the job." *Id.* GED measures the "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.* GED is

## I. Substantial Evidence Supports the ALJ's Disability Determination

Rodriguez argues the ALJ committed error because certain functional limitations[5] imposed by the ALJ allegedly were inconsistent with the reasoning ability required for the jobs the vocational expert said he could still perform.[6] Pl. Br. at 4. I will explain the legal context within which this claim arises before addressing the specifics of the parties' arguments.

### A. *Functional limitations vs. reasoning ability: the legal standards*

Social Security Ruling (SSR) 00-4p was adopted to clarify the Social Security Administration's standards for identifying and resolving conflicts between "occupational evidence provided by a [vocational expert] . . . and information in the DOT." SSR 00-4p. The ruling states that

> [o]ccupational evidence provided by a VE [vocational expert] or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by

---

broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. *Id.* Reasoning levels in the DOT range from level 1 to level 6. *Id.* Important to this case, jobs with a reasoning level of 3 require that an employee be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Id*; *Zirnsak* 777 F.3d at 616 (3d Cir. 2014).
[5] The ALJ limited plaintiff to "simple jobs, routine-type jobs." R. 57.
[6] The vocational expert limited plaintiff to "cashier at a parking lot," DOT 211.462-010 ("light, unskilled. SVP is 2."); "order clerk," DOT 209.567-010 ("sedentary and unskilled"); and "charge account clerk," DOT 205.367-014 ("unskilled sedentary"). R. 58-59.

determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-04p.

The Third Circuit has interpreted this ruling to mean that an ALJ has a duty to inquire about any discrepancy between a vocational expert's testimony and information contained in the DOT. *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002); *see also Walker v. Astrue*, 733 F.Supp. 2d 582, 509 (E.D. Pa. 2010). An ALJ's failure to comply with the requirements of SSR 00-04-p may result in a remand of a claim by the district court. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005). Nevertheless, a remand is only appropriate where the vocational expert's testimony is inconsistent with the DOT and there is no other substantial evidence in the record to support the ALJ's decision. *Id.*; *see also McHerrin v. Astrue*, No. 09–2035, 2010 WL 3516433, *5 (E.D. Pa. Aug. 31, 2010).

The Court of Appeals recently clarified the applicable standard of review for this type of claim. *Zirnsak*, 777 F.3d at 618-19 (establishing a three factor analysis for claims involving alleged discrepancies between a plaintiff's limitation to simple, repetitive jobs and DOT reasoning levels associated with the jobs the plaintiff is purportedly still able to perform). This decision, designated for publication while this matter was pending, controls the analysis moving forward.

### B. *The ALJ Did Not Err*

Plaintiff argues that his limitation to simple, repetitive tasks means that he is limited to performing jobs no greater than Level 1 or Level 2 reasoning, under the DOT

8

terminology. Pl. Br. at 4. Level 1 reasoning means applying "commonsense understanding to carry out simple one- or two-step instructions." *Id.* Level 2 reasoning is defined as applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* In further support of this statement, Rodriguez cites to numerous cases recommending remand due to the gap between Level 3 reasoning job requirements and a functional limitation to simple, repetitive tasks. *See* Pl. Br. at 4-9.

As an example, Rodriguez provides a listing for a Cashier position, which was one of the jobs identified by the vocational expert as a job in the national economy that the Plaintiff could perform. R. 58. This job requires a Level 3 reasoning capacity, meaning a worker must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* Pl. Br. at 14.[7] This Level 3 requirement is also found in the order clerk position and account clerk position. *Id.* at 17; 20. Rodriguez argues that if there is a discrepancy between a vocational expert's testimony about job requirements and the DOT's description of a job, the ALJ cannot rely on the VE's testimony to find that a claimant could perform in such a position. *Id.* at 10. This echoes the language of SSR 00-4p which "holds that occupational evidence provided by a vocational expert generally should be consistent with occupational information supplied by the DOT." *Id.* Rodriguez argues that

---

[7] Though the attachment is not paginated, I refer to the ECF numbering system.

In response, the Commissioner notes that remand is not mandated "where an ALJ has failed to discover and explain a conflict." Def. Br. at 4 (citing *Diehl v. Barnhart*, 357 F.Supp.2d 804 (E.D. Pa. 2005)). Nor is an inconsistency of this type fatal to a claim "if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." Def Br. at 4 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005)). The Commissioner explains that the job limitation to "simple, unskilled work" is not a limitation associated with a reasoning level, but is tethered to the DOT's Specific Vocational Preparation (SVP) level, which is the skill set needed to perform a job. *Id.* at 5. The Commissioner adds that:

> The DOT classifies all three of these jobs as having SVP levels of 2 ("anything beyond short demonstration up to and including 1 month"). See Pl.'s Br. at 13, 18, 21. SSR 00-4p explains that under the skill level definitions in the Commissioner's regulations, "unskilled work corresponds to an SVP of 1-2." 2000 WL 1898704 at *3 (citing 20 C.F.R. §§ 404.1568, 416.968). SSR 96-9p in turn explains that "understanding, remembering, and carrying out simple instructions" are "mental activities . . . generally required by competitive, remunerative, unskilled work." 1996 WL 374185, at *9 (S.S.A.) (emphasis added). Likewise, the Commissioner's regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . ." 20 C.F.R. § 416.968(a) (emphasis added). Accordingly, unskilled work — such as the jobs with an SVP of 2 identified by the VE — is simple work.

*Id.* The Commissioner urges me to adopt the reasoning in *Simpson v. Astrue,* No. 10-2874, 2011 WL 1883124 (E.D. Pa. May 17, 2011), in which the district court found there was no conflict between jobs with a reasoning level of 3 and a limitation to simple, routine tasks. Def. Br. at 6. Rodriguez argues that *Simpson* "does not hold up to careful scrutiny and disregards the language of SSR -00-4p." Pl. Rep. Br. at 1.

Rodriguez's argument is undercut by *Zirnsak*, a Court of Appeals decision issued

after the parties' briefing in this case that relied upon the reasoning in *Simpson*. 777 F.3d at 609.[8] In *Zirnsak*, the Court of Appeals addressed at length the "split of authority as to whether an inherent conflict exists between a job requiring level 3 reasoning and finding that a claimant should be limited to simple, routine tasks and unskilled work." *Id.* Some courts have held there was a *per se* inconsistency between simple, repetitive job limitations and level 3 reasoning, while others have held there was not. *Id.*

The Court in *Zirnsak* did not explicitly adopt either rule to the exclusion of the other. *Id.* Instead, the Court applied the analysis in *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009), and *Simpson* to determine whether an inconsistency existed in the particular case before it, and concluded that it did not. *Id.* at 618-19. In doing so the Court provided guidance on the factors to be considered when performing this case-specific analysis: 1) whether plaintiff actually argued that he was incapable of performing the jobs recommended by the vocational expert 2) whether inconsistencies between the vocational expert's testimony and the DOT were identified at the hearing and 3) whether or not the occupations listed by the vocational expert were intended to be exhaustive or were merely illustrative. *Id.*

Mr. Rodriguez does not meet any of the *Zirnsak* factors. He has not argued that

---

[8] I considered whether to ask for additional briefing and decided it was unnecessary. *Zirnsak* adopted the analysis in *Simpson*. *Simpson* was debated by the parties. Plaintiff took the position that I should ignore *Simpson* because it was poorly reasoned and inconsistent with SSR 00-4p. The Third Circuit disagreed, in *Zirnsak*. Plaintiff had ample reason and opportunity to address the analysis in *Simpson*. That he chose only to ask me to disregard it is a tacit but telling acknowledgment that if its analysis applies, he loses. It applies under *Zirnsak*.

he actually cannot perform the jobs identified by the vocational expert.[9] Both his brief and reply brief are devoted to a detailed exposition of the reasons why a residual functional capacity limitation to simple, repetitive tasks should categorically denote a limitation to Level 1 or 2 reasoning as defined in the DOT. What *Zirnsak's* first factor requires is something different: an argument based on the record that plaintiff actually cannot do the jobs identified by the vocational expert and the ALJ. As the Commissioner points out, applying the reasoning in *Simpson* (later adopted in *Zirnsak*), there are sound reasons drawn from the record in this case to believe that Plaintiff could perform simple, repetitive jobs. Def. Br. at 6. Plaintiff had formerly been a semi-skilled truck driver, which had a reasoning level of 3. R. 55-56; Def. Br. at 6. The field office representative noted plaintiff had "no problems with understanding, being coherent, concentrating, talking, or answering." Def. Br. at 6; R. 153. Plaintiff had the opportunity, and a reason, to make this argument, an argument flagged by the Commissioner's brief. He has not elected to do so.

The second *Zirnsak* factor asks if plaintiff highlighted the supposed inconsistency to the ALJ. In this case, Plaintiff did not. *See* R. 60. The vocational expert testified during the hearing that his assessment of available jobs was consistent with the information provided in the DOT. *Id.* Counsel did not attack the supposed inconsistencies between the vocational expert's testimony and the DOT during the hearing. R. 61. Plaintiff has not met the second *Zirnsak* factor.

As to the third *Zirnsak* factor, the job positions identified by the vocational expert

---

[9] Parking lot cashier, order clerk, and charge account clerk. R. 27.

were not intended to be exhaustive, but were examples only. The vocational expert testified that his findings were somewhat restricted, R. 58, but also testified that "there's *a whole range of clerical – unskilled clerical positions*," and then mentioned the job of "order clerk" as an example. R. 59 (emphasis added). The vocational expert went on to testify that "the aggregate for that classification of jobs is 10,000 regionally and 1.5 million nationally ." *Id.* Asked if there was anything besides "order clerk," the vocational expert responded "there's other job titles in that category, such as charge account clerk, call-out operator." *Id.* Asked what the "numbers" were for "charge account clerk," the vocational expert responded "It's all within that 10,000." R. 60. There is no doubt that the jobs mentioned by the vocational expert were merely illustrative, and not meant to be exclusive.

The crux of the holding in *Zirnsak* centers on whether the conflict between highlighted jobs and DOT definitions was obvious enough that the ALJ should have questioned the vocational expert about the discrepancy. *See Zirnsak*, 777 F.3d at 618 (citing *Simpson*, 2011 WL 1883124, at *7). My review of the record in light of *Zirnsak* convinces me that the discrepancy was not obvious enough to trigger this obligation on the ALJ's part. Plaintiff has not demonstrated that the ALJ committed an error requiring remand.

Because I find there was no error in this particular case, applying *Zirnsak,* I need not address the issue of whether there is – or is not – a categorical inconsistency between a functional limitation to simple, repetitive jobs and jobs assigned a reasoning level of 3 in the DOT. It is enough to find, based on *Zirnsak*, that there was no

inconsistency in this particular case substantial enough to warrant remand.

## **R E C O M M E N D A T I O N**

AND NOW, on June 30, 2015, it is respectfully recommended that Rodriguez's request for review be denied.

BY THE COURT:

 /s/ Richard A. Lloret                     _
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE